Good morning, Your Honors. David Zogman on behalf of Appellant Ken Francis, and I will attempt to save two minutes for rebuttal. Your Honors, there are two subjects, of course, in Mr. Francis' appeal, the Rule 11 issues and then the sentencing issues. It would be my inclination to first address the Rule 11 issues. Your Honors, it must be a source of enormous frustration to you that Rule 11 gets violated in these It's such an easy way to avoid an appeal, to simply follow the list of advisals that is required under Rule 11. And yet in this case, we had three wholesale omissions and the omission of the required recitals under Littlejohn. Counsel, help me with something here. The way I'm conceptualizing the case is this. The Rule 11 colloquy is awfully terse. However, the appellant made no showing that he would not have pleaded but for the errors in the Rule 11 colloquy. And when I look at what happened here, he got 135 months instead of the 210 and 262. He's right that if the judge had aggravated a sentence because he drove the courier to the hit, then he would have been entitled to a fining since the driver said, I didn't know I was driving her to a hit. But he didn't get the aggravation. And the way the judge explained the sentence is he said because of the plea bargain, he's giving him 135, which is just what you get with a 29, not with the not the 135 months that would give you the or the not the 210 to 262. So it looks I'm wondering whether the because is sufficient under 3553 because of the plea bargain and whether it doesn't matter anyway because there's no showing that he wouldn't have pleaded otherwise. Well, it sounds like Your Honor is headed towards the waiver issue, which is whether Mr. Francis's sentence. I don't know if you call that waiver. The Supremes have gotten real technical on what's waiver and what's forfeiture, and I haven't figured that out. Well, I think in this case, since we're talking about a waiver provision of the plea agreement,  And the strangest thing about this case, and I think helpful for Mr. Francis, is the government has not advocated that Mr. Francis has waived his appeal. But I'm asking you. But I don't think Your Honors can independently make that finding without the government advocating it because that would require Your Honor to grant relief. I'm not suggesting that he waived review. Okay. If I'm outside the rule of law. That's not what I'm asking. I'm saying as long as say the judge drops the ball, he doesn't read the whole script on the Rule 11 colloquy. It's an error. As I remember, the Supreme Court in a case called Dominguez or something. Indeed. Said that unless there's a showing that he would not have pleaded but for the errors and misinformation in the Rule 11 colloquy, it doesn't matter that there are unobjected to errors in the Rule 11 colloquy. I did try to make that argument that Mr. Francis, his main argument at sentencing and during the colloquy and actually during pretrial litigation was that he thought this was a conspiracy to smuggle diamonds. And while that may not be what he's admitting. Well, he admitted otherwise. Well, and that's the whole. In the allocution. That's the whole thing about the allocution is I don't see anything in the allocution where he says, oh, yeah, I knew at the time that I was smuggling MDMA. The judge reads him the indictment and reads the overt acts, but there's never a clear statement of mens rea saying I understood that this was a conspiracy to smuggle MDMA. He says after a while.  I realize this wasn't just diamonds. It was some kind of drugs. Absolutely. And that's the thing is if Mr. Francis wants to make this what some would term a foolish decision to go to trial, under Dominguez Benitez, we, the law allows him to make what some would describe as an incredibly foolish mistake to go to trial. And when you have a Rule 11 error, which is the judge didn't. It's not a foolish mistake question. It's a question of whether he has shown he would not have pled. And as Judge Kleinfeld pointed out, true. The waiver. We're not talking about the waiver. But it is most interesting to note I would not have pled. But in the plea, such as it was, he said, well, if you don't go over level 29 offense level, I won't even appeal this case. Now, I understand that that waiver doesn't hold. But it sure is an interesting piece of evidence that he thought, wow, getting 29 is really okay. That's fine. That's what I am willing to plead to take a 29. And that's what he got. I have to admit that the existence of the plea agreement is some evidence that he intended to plead guilty. I can't argue contrary. However, Mr. Francis has vigorously. And at the level he got. That's the real crux of it. He has vigorously urged me, though, that he does now desire to go to trial, that he didn't really intend. What matters is what he desired then. In tort cases, people hear from their brother-in-law they should have gotten more money. Criminal cases, they hear from the other people in prison they should have gotten a lighter sentence. What matters is what he thought then. And what he thought then is if I get a 29, I'm cool. And what he got, he didn't get a 29, but he got a 29 sentence. He got the exact sentence he would have gotten with a 29. Well, he didn't care about the 29. That's just a means to an end. The end is how much time he has to serve. And he got the amount of time he'd serve with a 29. So I can't see why we would even imagine that he would not have pleaded but for the errors in the Rule 11 colloquy. It sounds to me like Your Honor is saying that because he got the benefit of the sentence for which he bargained, that means that he would not – there's no reason to believe he would not have pled guilty absent the Rule 11 issues, because he got what he asked for. And there's no affidavit or other proof that he wouldn't have. I don't think I could provide that because, of course, the rule – the record is what the record is in the district court. But the thing is, I mean, in the district court, it would have been so easy for the district court to say here are the elements of a 846 conspiracy. You know something? I think what the Supreme Court is bothering the Supreme Court, and frankly we see enough of these appeals that it might be a little bit bothersome to us. Yes, the district judge could have – could have had his list out there and have done it perfectly. Where was defense counsel and the government? Where was defense counsel? Defense counsel, one sometimes thinks, just sort of lays back. The judge says, is everything okay? Everything's great. Now, that's not because defense counsel is stupid and doesn't know what the element – what is supposed to be done either. They just sit back. So when they do that, fine. It's not waiver. It's forfeiture. And so they've got to meet plein air. And the Supreme Court has said, here's how you get plein air review. You've got to show us it would have made a difference. And there you are. And where's the showing it would have made a difference? I don't want to give any – give away any trade secrets about what defense counsel does during the Rule 11. I wouldn't ask you to. There were three defense counsel in this particular case. And I don't know these lawyers personally. I do know that at the time it was kind of a heavy hitter. I think it was Milton Grimes was the counsel during the plea colloquy. So, you know, I don't know whether that speaks to whether defense counsel was just being lackadaisical or was setting a trap for the court. All I know is that Mr. Francis has consistently said, hey, I thought this was a diamond smuggling conspiracy. I did become aware it was an MDMA smuggling conspiracy at some point. But I don't see anywhere in the record where I can say for certain he knew at the time of the event. I am soon to come before you to be sentenced for my part in the smuggling of narcotics. What am I – how are you supposed to read that as anything other than, hey, I was smuggling dope. I wasn't smuggling diamonds. I think in that same letter, though, he says, you know, I got into this thing. Oh, he explains how he got into it. But at the end of the day, he knew what he was doing. Well, I hate to end on that note, but I've got a minute left. So I'll preserve that. Okay. It's a good time to sit down. Fair enough. All right. Ms. Murphy. Thank you. May it please the Court. Cheryl Murphy for the United States. Your Honor, here we have a defendant who was faced with strong evidence of his guilt and a favorable offer from the government, who decided to take that offer, pled guilty, and received exactly the benefit of his bargain. Thus, this Court should decline the invitation now to reverse the conviction and sentence because the defendant has not met his burden of establishing a reasonable probability that he would have – he would not have pled guilty but for the Rule 11 errors. And he has not established or objectively looking at the sentence, this Court can find that it was both procedurally and substantively reasonable. With respect to the Rule 11 violations, Your Honor, it is true, and the government concedes that there were violations of the Rule 11 colloquy in the district court level. No, I'm curious about this. One thing that good prosecutors did for me, especially when I was a new district judge, was whenever I erred, the prosecutor pointed out to me how I was erring so I could fix it instead of generating an appeal. Of course, from a defense lawyer's point of view, if there's an error, it doesn't really hurt you, but it may furnish an appeal point, you just lie in the weeds. It's a smart thing to do. And it's the prosecutor who then alerts the judge so he can fix it and there's no more appeal point. Where are the prosecutors? Your Honor, and I have to apologize because I was, in fact, the prosecutor at the guilty plea hearing in this case. And certainly in hindsight, I should have stood up and said something, but I can also submit to the Court that that's not always successful as a prosecutor in respectfully requesting that the district court do something that the district court doesn't believe it has to do. I loved it. But I guess it varies with the district judge. I don't understand. Why wouldn't you just get up and tell Judge Reel you're doing it wrong, Judge Reel? Your Honor, I'm going to have to assume that that is a rhetorical question, but in any event. It would have been really easy. In any event, the standard that this Court should apply is not to give the defendant the benefit of my mistakes at the district court level, but to look at whether it would have made any difference in his decision to plead guilty. And it simply wouldn't have. And in Mr. Zegman's remarks, he commented that there was nowhere in the record where the defendant admitted amends REIA. But I think that if the Court looks at the specific exchange with the district court in the factual basis of the Rule 11 colloquy, where the district court goes through many, though not all, of the overt acts, each overt act that the district court asks the defendant, did you do that, and the defendant admits, yes, he did, contains a specific reference to MDMA. At no point during the guilty plea colloquy did the defendant say, wait a minute, I never knew it was MDMA. I all along thought that it was diamonds. Moreover, the defendant did contest one of the overt acts that the district judge asked him about. So he wasn't, it's clear from the record that he wasn't simply going along and telling the judge what he wanted to hear, because with respect to one of the overt acts, the defendant stood up and said, no, I don't remember doing that. I don't think that I did that one, Your Honor. At the conclusion, at page 30 of the excerpts of record, where the district court asks sort of a summation question, did you do all of these things in connection with and names all of the other defendants, as part of the agreement to smuggle MDMA, the defendant says, yes, I did. So this belated notion that he had a legitimate defense and that he would have brought it if the district court had simply followed the rules better really shouldn't carry any weight with this Court. Sotomayor, may I ask you an entirely different question? Certainly. The district court here gave essentially no explanation for the sentence that was selected except maintenance of the plea agreement. Why, in your view, does that, having written it, I understand that you don't have to explain very much under Carty, and I don't think we should expect much of an explanation. But this is essentially no explanation, and so I'd like to hear your views on that. Well, Your Honor, it certainly is a brief explanation. Yes, it is. I think that the district court did hit the highlights that he's required to hit in explaining why he reached the sentence that he did. He stated that he had considered the factors under 3553a. He made findings regarding the sentencing guidelines calculations, and there's no showing that his findings were incorrect. There's no showing that he relied on any clearly erroneous facts in coming to his decision. And he explained that after hearing from the parties and the arguments on both sides, his decision was he was going to give the parties the benefit of their bargain and give them the sentence that they had contemplated in the plea agreement. And maintaining a plea agreement is a sufficient 3553a reason? I think that it is a sufficient reason, having considered the 3553a factors, which the district court said that he did hear. So although brief, I think that under Rita and Carty it certainly satisfies the bare minimum requirement. It certainly would have been a better practice to address the defendant's specific arguments. I was thinking about what it would mean to address the facts of the case in a reasoned explanation of the sentence. I can't think of how you would explain giving somebody only 11 or 12 years to serve for driving somebody to a hit. How come he got off so lightly? Well, for a number of reasons, Your Honor. He was not actually charged with that offense. It was simply relevant conduct that the government urged the district court should consider. And the defendant maintains that he did not know what was happening. Do you always choose not to charge people with crimes that involve murder and to accept their explanations? No, of course I don't do that, Your Honor. Had the government been able to prove beyond a reasonable doubt exactly what was going on that night, the government would have charged this defendant. Pardon? Or by a preponderance in sentencing. That's correct, Your Honor. But given the fact that the government had chosen to make a plea offer to this defendant, we were bound to seek a sentence within what we had promised we would seek. And so we saw at the high end, given the defendant's role in the offense, the fact that he did not substantially cooperate as many of the other defendants did, and given his participation in what we believe was knowingly driving this courier to her death. I'm thinking the worst thing that could possibly happen in this case for Francis is to win. That thought has certainly crossed my mind as well, Your Honor. But I suppose that's Mr. Francis's election to bring this case before the court. With respect to the sentencing disparity argument, there is one additional matter that I'd like to bring to the Court's attention, and that is if the Court looks at the sentence that the defendant was asking for, 51 months, if the Court looks at the sentences received by the other defendants, it will see that that actually would have created a sentencing disparity rather than relieving the existence of a sentencing disparity. Fifty-one months is exactly the sentence that co-defendant Anderson received. And co-defendant Anderson received a 5K motion, and he cooperated with the government, and he entered the conspiracy at the very tail end, having recruited only one courier at the end of the conspiracy. So he had a much smaller role than Defendant Francis. He wasn't involved in the events that led to Ms. Edmondson's death. And he cooperated with the government. So by comparison to that defendant alone, you can see that there is no merit to this notion that the sentence this defendant received creates an unwarranted sentencing disparity. If the Court has no further questions, I'll submit on that. Thank you. Kagan. Thank you. Mr. Zuckerman. Just briefly, Your Honors. I think that if you're going to require any sort of explanation, you should be at least be confident in knowing exactly what the district court did. The defense and the government have different views of how to get what machinations the district court went through in arriving at the sentence it did. I had originally read the record to say 135 means that I'm adopting what the parties had advocated in the plea agreement. And the government in their response brief said, no, he was really imposing that as a variance. And we really should not be disputing what exactly the district court did. And it's not clear from the record what the district court did. And, you know, if Rita and Gollum-Kimbrough require anything, we should at least know why the district court did what it did. And this could ultimately be a cautionary tale about being careful what you wish for. But this is what Mr. Francis wanted. So I think it should be remanded to the district court for a determination of what exactly the sentencing gymnastics were. Thank you, Your Honors. All right. Thank you, counsel. Both of you. The matter just argued will be submitted. And we'll move next to your argument in United States versus Colorado.
judges: Fernandez, Rymer, Kleinfeld